## STATE v. PLACE .

Where, in a prosecution for keeping a saloon open on Sunday, each juror must have reached a conclusion soon after retiring, in view of the issues and the evidence, and an all night session failed to produce an agreement, no misunderstanding existing as to the law of the case, a statement by the judge, repeated over objection, that the jury would be kept together until they agreed on a verdict, was error.

Such irregularity was included under Rev. Code Cr. Proc. 430, relating to criminal actions and authorizing, in Subdivision 4, a new trial, "when the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of the jurors."

Under Rev. Code Cr. Proc. § 430, subd. 4, authorizing a new trial when the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of the jurors, where accused specifically alleged in his application for a new trial that the verdict was secured by improper conduct of the trial judge in stating that the jurors would be kept together until an agreement was reached, the question was presented to the trial court and to the Appellate Court, although defendant did not designate such ground of objection in the language of the statute.

(Opinion filed, May 9, 1906.)

Error from Circuit Court, Lyman County. Hon. FRANK B. SMITH, Judge.

W. E. Place was convicted of keeping a saloon open on Sunday, and brings error. Reversed.

*James Brown* and *I. N. Auld,* for plaintiff in error.

The old rule permitting coercion of a jury in order to secure a verdict has been swept away and under our present method the independence of a jury is respected. People v. Sheldon, 156 N. Y. 268, 41 L. R. A. 644.

*Philo Hall,, Attorney General,* and *Aubrey Lawrence, Ass't Attorney General,* for the state.

The court, in the exercise of a proper discretion may direct the jury to retire for further deliberation, even after a second announcement that they could not agree. Hughes' Instructions to Juries, § 188. The trial judge may properly in his discretion intimate to a disagreeing jury his intention to confine them until the end of the term. State v. Grizzard, 89 N. C. 115. Unless the communication from the officer to the jury had the manifest tendency to influence the jury improperly against the unsuccessful party, or was

such that prejudice has resulted to such party, it furnishes no ground for a new trial. Darling v. New York P. & B. R. Co., 16. L. R. A. 643.

HANEY, J. Having been found guilty of failing to keep his. saloon closed on Sunday, the defendant "moved for a new trial on the grounds that the court had misdirected the jury in matters of law arising during the course of the trial, and especially because the court had instructed the jury that he would keep them together until they should agree upon a verdict, and because the verdict is contrary to the law and the evidence, which motion was denied by the court, to which the defendant excepted. Defendant then moved in arrest of judgment on the same grounds, which was denied, and defendant excepted." Concerning the conduct of the court and jury, after the case was submitted, the record reads as follows: "The jury retired to consider the case at 9 o'clock p. m. on June 21, 1905, and after being out all night and all the next forenoon, without having agreed upon a verdict, they were brought into court and asked by the court if they had agreed upon a verdict, to which they replied that they had not. The court thereupon asked, 'What seems to be the matter?' to which the foreman replied, 'we are shy on evidence.' The court thereupon replied that he could not help them out any on the evidence, if it were matters of law he could give them further instructions. 'But,' said he, 'you will have to agree to this case, for I will keep you together until you do agree.' Defendant's counsel thereupon excepted to the court's statement to the jury that he would keep the jury together until they did agree, and to this the court replied in substance: 'You may have an exception, but I will keep this jury together until they do agree upon a verdict.' All of the foregoing took place in the presence and hearing of the jury. The court thereupon directed the jury to retire with the officer, at the time of taking the noon recess, which they did, and when the court reconvened after recess, at 1:30 p. m. on June 22d, the jury was brought into court, and asked by the court if they had agreed upon a verdict, to which they replied that they had, whereupon the court asked them what their verdict was, and the foreman replied: 'We, the jury, find the defendant guilty as.

charged in the information.' The jury was then polled and each answered that that was his verdict."

In this enlightened age no one will contend that a verdict should stand which does not, at least presumptively, express the free and deliberate judgment of those who rendered it. The old rule permitting the coercion of juries has been swept away. Under modern methods of procedure the independence of the jury is, and it should be respected. People v. Sheldon, 50 N. E. 840, 41 L. R. A. 644. "No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence or his integrity. Personal considerations should never be permitted to influence his conclusions, and the thought of them should never be presented to him as a motive for action." State v. Bybee, 17 Kan. 462. Nor should the decision of a juror be influenced by a fear of indefinite confinement in a jury room to his own and his associates' inconvenience and discomfort. This, in effect, is conceded by the learned Attorney General; but he insists (1) that coercion cannot be inferred from any fact disclosed by the record in this case, and (2) that, if any of the jurors were unduly influenced, our rules of criminal procedure afford no means by which the error may be reviewed.

The first contention is not tenable. In view of the issues involved and quantity of evidence introduced, each juror must have reached a conclusion soon after retiring. An all night session failed to produce an agreement as to the facts. No misunderstanding existed as to the law of the case. Then came the statement of the learned circuit judge that the jury would not be permitted to separate without an agreement. The statement was deliberate, repeated after objection by the accused. It cannot be assumed that the judge did not intend to execute his threat or that the jury would question his sincerity. When the disagreement was reported one juror, at least was opposed to conviction. Unless his opinion was changed by further deliberation, he confronted the alternative of surrendering his convictions or of compelling himself and his associates to remain together indefinitely. It would be absurd to say that such a situation probably would have no effect upon the action of an average juror. Moreover, the statement, considered in con-

nection with the tone of the entire charge, was calculated to convey the impression that the court believed the defendant was guilty, and would not discharge the jury until they concurred in such belief.

Nor can the state's second contention be sustained. The irregularity here disclosed is included in the clause of the statue relating. to criminal actions which authorizes a new trial, "when the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of the jurors." Rev. Code Cr. Proc. § 430, subd. 4. Though the defendant did not designate this ground in the language of the statute, he specifically alleged the objectionable means by which the verdict was secured in his application for a new trial, thus presenting the question to the court below and to this court. Of course, it is possible that the action of no juror was influenced by the court's statement, but such statement was so clearly improper and so well calculated to prejudice the rights of the accused, we cannot assume that it did not have that effect. This conclusion in no wise conflicts with the universally recognized rule that great latitude is allowed trial judges with respect to the time in which disagreeing jurors may be kept together. Nor does it preclude any reasonable effort to secure an agreement which leaves each juror at liberty to adhere to his individual convictions uninfluenced by any consideration other than a desire to conscientiously discharge his duty. Within the limits allowed by the law, the discharge of such duty is as important and should be as free from coercion as are the duties imposed upon the judge. Neither court nor jury is responsible for the conduct of the other while acting within its own legitimate province.

The judgment of the circuit court is reversed, and a new trial ordered.