**Roger Allen MARSH, Petitioner,**

v.

**Hoyt C. CUPP, Superintendent, Oregon State Penitentiary, Respondent.**

**Civil No. 73-250.**

United States District Court,
D. Oregon.

April 4, 1975.

Charles Robinowitz, Portland, Or., for petitioner.

Scott McAllister, Asst. Atty. Gen., Salem, Or., for respondent.

## RECOMMENDATION AND ORDER

BELLONI, Chief Judge.

Roger Allen Marsh, a state prisoner, seeks a writ of habeas corpus. He is in respondent's custody pursuant to a jury conviction of the crime of Rape. State remedies have been exhausted.

In an earlier opinion, this court ruled that all but one of petitioner's contentions were without merit. The issue now before the court is whether, under the totality of the circumstances, a second "Allen" charge to the jury violated any of petitioner's federally protected rights. A full and fair fact hearing was conducted on this issue. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

The record indicates that the jury retired at 4:20 p. m. on May 19, 1970. At 8:45 p. m., after the jury indicated a 6 to 6 split, the trial judge gave a modified "Allen" charge. This court has held that this instruction alone did not constitute a violation of federally protected rights.

At about 11:00 p. m., in response to an inquiry from the court, the jury indicated that its split was 9 to 3, without indicating whether it favored the prosecution or the defense. At 12:05 a. m. on May 20, 1970, the trial judge sent a note to the jury with consent of counsel which asked whether there was any reasonable chance of reaching a verdict in 30 minutes. The jury, without replying to the question, asked in writing whether a specific factual situation constituted rape. At 12:10 a. m. the court reinstructed the jury on the elements of rape and then gave a second "Allen" charge as follows:

Further, I will repeat to you what I told you earlier this evening at about 9:00 o'clock. What we ask of you is the honest, conscientious individual vote of each one of you for any given verdict. We ask each of you on one side to carefully consider the discussions, points of view of those on the other side. And we point out to you that this case ought to be decided. If it is tried again in all likelihood the jury will be no better equipped than yourself, the jury will be similarly selected as you were in all likelihood, the evidence will be the same. And therefore, it is imcumbent [sic] upon you to reach a verdict. Bearing in mind, however, that we do not expect any of you to vote one way or the other except according to your own conscience based upon the evidence and upon these instructions. I will now ask you to retire to deliberate further.

Less than eighteen minutes later, the jury returned a 10 to 2 verdict of guilty.[1]

Several factors must be viewed in applying the totality of the circumstances test required by Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). The language of the charge is important. Jones v. Norvell, 472 F.2d 1185 (6th Cir. 1973). Here the court instructed that ". . . it is incumbent on you to reach a verdict . . . ." This court is not aware of this language being used by any court which has given a modified version of the instruction approved in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). See United States v. Jennings, 471 F.2d 1310 (2nd Cir. 1973); United States v. Bailey, 468 F.2d 652 (5th Cir. 1972); United States v. Rogers, 289 F.2d 433 (4th Cir. 1961); Peterson v. United States, 213 F. 920 (9th Cir. 1914). Although the instruction was balanced with the comment that the jurors must base their vote on their conscience and the evidence, the above quoted language could well have had a coercive effect.

Before the "Allen" charge, the court inquired into the numerical count of the jury. This practice has been criticized. Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926); Spaugh v. United States, 77 F.2d 720 (9th Cir. 1935). Identification of the jury count was one of the factors listed in Jones v. Norvell, supra, as adding to the unconstitutional total circumstances.

The fact that the jury made a decision within 18 minutes of the "Allen" charge under review is some indication of actual coercive effect on the jury. This factor was considered in Jones v. Nor-

vell, supra (5 minutes); United States v. Rogers, supra (17 minutes); and Peterson v. United States, supra ("within a few minutes").

The lateness of the hour of the instruction (12:10 a. m.) given after the jury had deliberated nearly 8 hours, the fact that this was the second "Allen" charge given to the jury, and the knowledge that the court had earlier inquired if a verdict would be reached in 30 minutes all added to the coercive effect of the instruction. [2]

Viewing the above events in their totality, there is no way that a conclusion can be reached that the jury was not impermissibly influenced. Indeed, the possibility of coercion in these circumstances is more likely than not and violates petitoner's right to a fair and impartial jury trial.

The respondent should be given a reasonable time in which to give petitioner a new trial; otherwise, the writ should issue.

Dated this 17th day of September, 1974.

(s) George E. Juba
United States Magistrate

BELLONI, Chief Judge.

After review of the file and record in this case, I cannot approve the above recommendation.

If, after a review of the totality of the circumstances surrounding this verdict, a violation of petitioner's federally protected rights is found, a new trial must be granted. A review of these circumstances, however, shows that neither the instructions nor the surrounding circumstances were improperly coercive.[3]

---

1. The only reasonable inference to be drawn from the 11:00 p. m. report that the jury was split 9 to 3 is that the majority favored the prosecution. Thus, the capitulation of one juror resulted in a guilty verdict.

2. There is no question that the prosecution presented sufficient evidence to support the conviction. There were, however, weaknesses in the case which could cause jurors to have difficulty voting for a verdict of guilty.

3. In this case, I need not hold a new evidentiary hearing as required by United States v. Bergera and United States v. Mitchell, 512 F.2d 391 (9th Cir. 1975), because the Magistrate held no such hearing and none was required. The case was submitted to the Magistrate on the record supplemented only by oral argument.

Courts have struck down various "modified" Allen charges because the very language of the instruction is coercive. Jones v. Norvell, 472 F.2d 1185 (6th Cir. 1973), cert. den., 411 U.S. 986, 93 S.Ct. 2275, 36 L.Ed.2d 964 (1973); United States v. Rogers, 289 F.2d 433 (4th Cir. 1961); Jenkins v. United States, 380 U.S. 455, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). The case before us can be distinguished from the above cited cases. In *Jenkins* the trial judge declared, "Now I am not going to accept this. You have got to make a decision in this case." The coercive effect of this statement cannot, within reason, be attributed to the instructions in the instant case. In *Jones* and *Rogers*, the courts emphasized the jury's duty to decide the case while failing to emphasize each juror's right to maintain his own conscientious convictions. The effect of such a one-sided instruction is improper coercion against the minority to concede to the wishes of the majority. In the present case, however, the instruction protected both interests: emphasizing the jury's duty to decide the issues and at the same time emphasizing each juror's right to maintain his own conscientious convictions. The language of these instructions was not so coercive as to violate petitioner's federally protected rights.

Another factor to be considered is the time when the instruction was given in relation to the time when the jurors retired for deliberation and the time between the giving of the charge and the return of the verdict. The only real factor here is the time between the giving of the instructions and the return of the verdict. Both *Jones* (supra) (5 mins.) and Rogers (supra) (7 mins.) viewed the time factor as part of the consideration of the coercive nature of the instructions. In the instant case, the verdict was returned less than 18 minutes after the second Allen charge was given. The important factor is, however, that this was the *second* charge given. The first Allen charge was given 3½ hours earlier when the split was 6 to 6. The

only reasonable inference to be drawn from the fact that at the time of the second charge they were split 9 to 3 is that the jury was making some progress and was engaged in meaningful deliberations. The verdict following the second Allen charge can be reasonably attributed, then, to the *first* instruction and not to any "coerciveness" of the second.

The response to the court's note asking of the chances to reach a verdict within 30 minutes is also evidence of the non-coercive nature of the instruction. Upon receipt of the court's question, the jury responded with a question as to the consequence of a certain factual situation. A reasonable conclusion, and one drawn by the Oregon State Supreme Court [State v. Marsh, 260 Or. 416, 490 P.2d 491 (1971)], is that this response indicated that the jury could reach a verdict within 30 minutes if the court would make clear the instruction regarding rape.

The trial judge, prior to giving the second Allen charge, inquired as to the numerical split of the jury. The United States Supreme Court, as well as the Ninth Circuit, has criticized this practice. Brasfield v. United States, 272 U.S. 449, 47 S.Ct. 135, 71 L.Ed. 345 (1926); Spaugh v. United States, 77 F.2d 720 (9th Cir. 1935). Both of these decisions, however, were based on the courts' *supervisory powers* and not on constitutional interpretation. Therefore, neither *Brasfield* nor *Spaugh* control in this Habeas Corpus proceeding.

The trial judge had no way of knowing whether the majority favored the prosecution or the defense. He was careful to avoid putting any pressure on the minority by saying, "What we ask of you is the *honest, conscientious individual* vote of each one of you for any given verdict" and ". . . we do not expect any one of you to vote one way or the other *except according to your own conscience* based upon the evidence and upon these instructions." The change in the jury count could have been due to

many reasons. The most reasonable, considering the fact that only 1 of 3 jurors changed his vote and the request for the explanation of the elements of rape, is not that the jury was coerced but rather that one of the jurors was ready to change his vote but needed a little more clarification of the crime charged before he did so.

Viewing the above facts in their totality, this court cannot find that the jury was impermissibly influenced. Petitioner's right to a fair and impartial trial was not violated.

The petition is denied.